Jones, J.
We hold invalid as applied to a candidate for judicial office a provision of the internal by-laws of a political party limiting nominations by that party to one who has agreed to refuse to accept, the nomination of any other political party.
Article VII (§ 1, subd. f) of the by-laws of the Nassau County Democratic Committee provided as follows: “ Designations or nominations shall be made only of persons who shall have agreed in writing, duly acknowledged, to refuse to accept the designation or nomination of any other political party or independent party or body; except that a candidate nominated for the judiciary may accept a Republican nomination.” Petitioner, an enrolled Democrat, was nominated by the Nassau County Democratic Committee as its candidate for the office of County Judge in the general election of November, 1973. He was also nominated as candidate of the Conservative Party for the same office. Although petitioner was not in fact asked to sign the by-law agreement, he was requested to renounce his Conservative Party nomination. When he refused the Nassau County Democratic Committee voted to censure him and to give him no financial or other support in the election. Petitioner then instituted the present action for declaratory and injunctive relief.
*472 Special Term, on the basis of findings that petitioner had not been asked to sign any written agreement and thus that the by-law provision had not been invoked against him, coupled with the fact that there was no showing that the by-law provision had been applied to any other judicial candidate, concluded that there was no justiciable controversy as to-article VII ( § 1, subd. f). As to the censure, the court held that it had no right or business to become enmeshed in the internal workings of a political party.
The Appellate Division reversed the dismissal of the petition. While it agreed that the courts could not intrude in matters of internal party discipline it declared the challenged by-law invalid and unenforceable against petitioner, predicated on the proposition that in Matter of Devane v. Touhey (33 N Y 2d 48) we had overruled our prior decision in Matter of Yevoli v. Cristenfeld (29 N Y 2d 591). The case is now before us on cross appeals.
Preliminarily we note that although the general election of 1973 is now well behind us and this proceeding could thus be said to be moot, the issue tendered as to the validity of the by-law provision involves questions of public importance likely to arise again. (Cf. Le Drugstore Etats Unis v. New York State Bd. of Pharmacy, 33 N Y 2d 298, and cases cited p. 301.) Accordingly we proceed to a determination of that issue. The questions raised by petitioner as to his censure, on the other hand, are not only moot, but are not properly before us under CPLB 5601 (subd. [a]).
In Matter of Devane v. Touhey (supra) we held unconstitutional a statutory prohibition, found in section 138-b of the Election Law, against candidates for an office other than a judicial or State-wide office accepting nominations both of a political party and of an independent body. On the other hand, in Matter of Yevoli v. Cristenfeld (supra) we held it permissible for political parties to accomplish a similar result by internal party rule designed “ to encourage the continuance of a- true two-party system” (37 A D 2d 153, 159). In the first case there was involved a State statute; in the latter, a party rule. These decisions thus traveled skew lines. It cannot accurately be said that Devane overruled Yevoli.
*473 It is true that the party rule which we upheld in Tevoli is the same as the by-law which we now strike down in limited aspect. In Tevoli the rule was broad enough to cover candidates for judicial office, although the case itself did not specifically present such application. In any event, we now depart from any holding of unlimited validity and to the extent that Tevoli could have been understood to uphold the rule as to judicial candidates, but only to that extent, it is now overruled. Notably, judicial office had been expressly excluded from the statutory prohibition of section 138-b held unconstitutional in Devane.
In Matter of Donovan v. Board of Elections (29 N Y 2d 725) we declined to undo the promotion by a party organization of a write-in opponent of the regularly-designated party candidate for judicial office who had refused to sign an affirmation of party principles as well as an agreement against cross-indorsements. The issue turned on a difficult point, namely, whether the courts could indirectly compel a political organization to back its once-designated candidate and enjoin it from fielding an opponent. Significantly in refusing to invalidate a completed primary election, the court signaled the troublesome ethical issue implicit in the case by stating that ‘ ‘ political organization leaders ought not exact a promise of party loyalty from candidates for judicial office as a condition of support, and such candidates should not make these promises in exchange for support ”. A more precise choice of words would have replaced u ought not ” with the more accurate ‘‘ may not ”.
We now confront the issue frontally.
Although the political elective process for the judiciary makes judicial candidates political party candidates, they are not as others. They may not indorse one another. They may not attack one another. They may not indorse or attack candidates, of their own or another party, for nonjudicial office. They may not contribute to the political war-chests of other candidates. They may appear at political meetings but must maintain political neutrality publicly, as to other candidates or issues not involving the courts. They are, in short, to be as nonpartisan as the selection of Judges by election permits (Code of Judicial Conduct, Canon 7).
*474 The offending rule cuts right across these principles. It compels or would compel a judicial candidate to be involved more deeply than he already is in the political contest and the trading for party nominations and designations. The candidate’s obeisance to the- rule must signify a lack of independence to make his own judgment whether another party is entitled, to name him as a candidate or whether he wishes to run as a candidate on the ticket of that other party. Hence, it would compel him to take a partisan position not essential tó his candidacy under the present political system of selecting Judges by election.
We suggest that, if a party rule were to require a judicial candidate, incident to his nomination, to state his position on issues that might later come before him if nominated and elected, no one would doubt that the rule would be held invalid as violative of public policy. Yet such a rule would not command a violation of law but rather of a canon of judicial ethics (Code of Judicial Conduct, Canon 7, subd. B, par. [1], cl. [c]).
With awareness that it may be said that the precedents are not clear-cut, we have no doubt as to the leadership the court must provide if the courts are to become less politicized than they have been.
Accordingly we now hold that an internal rule or by-law of a political party is invalid if it mandates unethical conduct on the part of a candidate for judicial office, be he an incumbent Judge or an aspirant for such office for the first time. While all that is unethical is not illegal, that which would command unethical conduct violates public policy and is invalid for that reason. This is at least true with respect to a candidate for public office. It is one thing for the law to leave to one the option of whether to behave morally or ethically; it is quite another for our court to close its eyes to the exertion of pressure by a public or quasi-public body, such as a political organization subject to and operating within the framework of the Election Law, to do an unethical act. Such inaction would be tantamount to the law’s lending its sanction to a practice in violation of public policy (cf. Shelley v. Kraemer, 334 U. S. 1, 19).
Applying these principles to the issue before us we note, inter alia, that the Committee on Professional Ethics of the New York *475 State Bar Association has held that it is improper for a candidate for judicial office to agree with a political organization, as a condition to designation by its party, not to accept nomination of another political party (Opinion No. 250 [30-72; May 24, 1972]; cf. Opinion No; 271 [58-72; Nov. 17, 1972]).
There can be no doubt that after election a Judge has no partisan responsibility to any political party. On the contrary his responsibility is to discharge the duties of his judicial office in total indifference to any prior political affiliation. By like token no restrictions for narrow partisan political advantage can be permitted in the nominations of candidates from whom the electorate will make its choice. The right of franchise exercisable by the voter and the right of a judicial candidate to appear on more than one line on the ballot converge to strike down this by-law. That this is a pre-election rather than a post-election constraint, does not save it.*
That this provision was included in the party rules gives evidence of an intention to create , an impermissible reciprocity of obligation between a political party and its candidate for judicial office. The assertion of respondents on this appeal that their duty was “ clearly to act so as to inform the electorate that this candidate has violated party principle and party policy ”, reflects a belief in party discipline repugnant to the choice and functioning of an independent judiciary.
So long as Judges are chosen by popular election they cannot, we recognize, be isolated entirely from the political process. A line must be drawn, however, demarking permitted from impermissible practice. In our view the exaction of agreements against cross-indorsements falls over the line into the forbidden area.
We accordingly hold this by-law provision invalid as in contravention of a public policy which mandates that insofar as practicable both selection for and performance in judicial office shall be free from political manipulation.
*476 On respondents’ appeal the order of the Appellate Division should be affirmed. Petitioner’s cross appeal should be dismissed on the grounds that the dissent at the Appellate Division is not in his favor (CPLR 5601, subd. [a], par [i]) and that he was not aggrieved by the modification of the majority (CPLR 5601, subd. [a], par. [iii]).
Chief Judge Breitel and Judges Jasen, Gabrielli and Stevens concur; Judges Wachtler and Rabin taking no part.
On respondents’ appeal: Order affirmed, without costs.
On petitioner’s cross appeal: Appeal dismissed, without costs.

 Nor does it avail respondents, to seek to support the by-law by asserting that, as in the present case, they do not really insist on compliance with it. Similarly it does not advance respondents’ cause to point out that petitioner was not obligated to accept the Conservative Party nomination; the evil lies not in compulsion to accept the indorsement of any other party, but rather in practical compulsion to decline it.