Jones, J.
(dissenting). We cannot agree with the disposition reached by the majority.
In view of the action of the Suffolk County Conservative Party Committee on October 13, 1978 declaring that the so-called Giordano slate of officers, including its secretary, was validly elected at a meeting of the Islip Town Committee on October 1, 1978, those officers should be recognized as the officers of the Islip Town Committee until the action of the county executive committee has been overturned or their election declared to be invalid in the courts. While an independent proceeding has been instituted to accomplish this objective, it is still pending without final resolution; a summary disposition in favor of the Leirer group was reversed by the Appellate Division on July 9, 1979 and the independent proceeding was remanded for an evidentiary hearing (Town of Islip Town Committee of Conservative Party of N. Y. State v Leo, 71 AD2d 624). In this circumstance the Giordano officers should be recognized in the proceedings now before us as entitled to file the Wilson-Pakula certificate of authorization under subdivision 3 of section 6-120 of the Election Law.
The rules of the Suffolk County Committee of the Conservative Party, adopted "for the organization and government of the Conservative Party of the County of Suffolk”, grant to that committee general authority over the Conservative Party organization of the county "and every subdivision thereof’ (art II, § 1). It is there provided that all committees of the party within Suffolk County are under the jurisdiction of the county committee. In view of the authority thus conferred, the county executive committee (acting on behalf of the county committee) was empowered to resolve intraparty disputes between the warring factions in the Town of Islip. The resolution adopted on October 13, 1978 declaring that the Giordano slate had been lawfully elected as officers of the Islip Town Committee on October 1, 1978 should be given recognition, at least until it has been annulled by some judicial determination following completion of the hearing in the Town of Islip case.
Aware of the differences which might arise at the October 1 town committee meeting, the county executive committee had designated representatives to attend the meeting on its behalf *628 and to report "their observations about the [meeting] and the manner in which [it] was conducted”. At least in part on the basis of the report of these observers, the county executive committee unanimously and officially declared the Giordano officers, including Dianna M. Peragine as secretary, duly elected.
In our view this declaration, dealing as it did with intraparty affairs, was within the scope of the authority conferred by the Conservative Party on its county committee.[1] Thus, at least in the context of this election case when time considerations practically preclude awaiting the final judicial determination in the underlying independent proceeding,[2] we should recognize and accept the October 13, 1978 resolution as determinative. The issue is not one of "regularity” but of the effect to be accorded the determination of the county committee.
The view has often been expressed that, insofar as consistent with the clear responsibility of the courts to enforce constitutional rights and the provisions of the Election Law and other statutes and to uphold considerations of public policy as reflected in judicial decisions, internal issues arising within political parties are best left to resolution within the party organization. (See 18 NY Jur, Elections, § 95.) This principle has particular vitality when applied to Wilson-Pakula designations (Matter of Wydler v Christenfeld, 35 NY2d 719).
Accordingly, we would reverse the order of the Appellate Division.
Chief Judge Cooke and Judges Gabrielli, Wachtler and Fuchsberg concur; Judge Jones dissents and votes to reverse in a separate opinion in which Judges Jasen and Meyer concur.
(Motion for leave to appeal granted August 29, 1979.)
*629 Order affirmed, without costs, in a memorandum.

. It might be contended that, if the challenge to the Giordano elections were based in any part on alleged violations of or failures to comply with the provisions of the Election Law or other statute, such authority of resolution should not be held to be vested in the party organization. We need not consider any such contention, however, inasmuch as all counsel have assured us that no such claims are advanced in the independent proceeding; we are told that the infirmities there asserted represent alleged noncompliance with party rules or with rules of parliamentary procedure generally.

. The record before us does not disclose that any order has been granted in that proceeding staying action by the Giordano officers. If such relief were desired it should have been sought and obtained in that proceeding.